UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 06-civ-80535 Ryskamp/Vitunac
Case No: 09-cv-80934-Ryskamp/Vitunac

OREN TAVORY,

    Plaintiff

v.

KATHY BARBER and
MYRA AMEIGH,

    Defendants.
    _____/

## PLAINTIFF'S REPLY TO VISTAR'S RESPONSE TO PLAINTIFF'S MOTION TO COMPEL PRODUCTION OF DOCUMENTS

This is the Reply of Plaintiff, Oren Tavory ("Tavory"), to the Opposition Memorandum of Vistar Technologies Corp. ("Opposition") [Dkt. 128] to Plaintiff's Motion to Compel Production of Documents [Dkt. 117].

The requirement of good faith imposed upon parties and their counsel by the Federal Rules of Civil Procedure seems to mean nothing to the Defendants and their attorneys. Their failure to simply give Tavory the documents which they identified in their Rule 26 disclosures in response to Tavory's June 18, 2010 requests that they do so, is inexcusable. They have ignored the requirements of Rules 26 and 34 of the Federal Rules of Civil Procedure and refused to produce even a single document to Tavory. And they have refused to honor commitments made during a discovery dispute resolution conference, that Tavory

would get the documents if he directed his request to Vistar.[1]  But Vistar has not produced the documents either, forcing Tavory to file two motions to compel with this court, one against Ameigh and Barber and one against Vistar.  Notwithstanding these efforts, all that Tavory has received in production during the four months that have ellapsed since Tavory served his document requests are a few Vistar tax returns.  Tavory, in contrast, has produced over 24.4 gigabytes of data and more than 33,000 files to the Defendants, including the source code which is at issue in this case.  Tavory's legitimate attempts to obtain even the most basic discovery - Rule 26 voluntary disclosure material - have been thwarted with baseless objections and now, in the Opposition memoranda filed by Ameigh, Barber and Vistar, false and scandalous accusations about him.

### A. Ameigh and Barber's Control of Vistar Makes Vistar's Objections Disingenuous.

Tavory cannot reply to Vistar's Opposition without discussing Ameigh and Barber, because, since Ameigh and Barber ousted Tavory from Vistar in December, 2005, Vistar is just the alter ego of Ameigh and Barber.  They claim to be Vistar's sole officers and directors and its controlling shareholders.[2]  Most importantly, they control all of its customer relationships and its bank account.  *See* Exhibit C hereto at ¶¶ 34-48.  Since 2005, they have used that financial control to hire attorneys from four different law firms to wage their

---

[1] Tavory served the subpoena upon Vistar because Joel Rothman, who represents Ameigh and Barber in this case and Vistar in the consolidated federal case and in both of the related state court cases between these parties, told Tavory's counsel during their July 27, 2010 telephone conference that this would resolve the discovery dispute.  See Declarations of D. Wasylik and G. Donovan Conwell Jr. attached as Exhibits A and B.

[2] There are at most three Vistar shareholders.  The state court actions involve whether Vistar is owned and/or controlled 50/50 by Tavory and Ameigh (Tavory's position) or 42 ½, 42 ½ and 15% by Tavory, Ameigh and Barber (the Defendants' position). See generally Tavory's Motion for Summary Judgment in the 06 matter [Dkt. 45] and exhibits thereto, and Vistar's opposition thereto [Dkt. 68], and Tavory's reply [Dkt. 77]. See also [Dkt. 9] (documents in support of summary judgment).

personal war against Tavory to complete their theft of Vistar and Tavory's software from him, paying many of the legal fees and expenses with Vistar money.  So, there is no good faith basis for Ameigh and Barber's refusal to produce to Tavory the source code used by Vistar and the company emails and documents which they identified in their Rule 26 voluntary disclosures on the grounds that it belongs to Vistar and not to them.  The source code and other requested documents are in the Defendants' custody and control and, therefore, must be produced.  Rule 34(a)(1), Fed. R. Civ. P. (requiring production of items "in the responding party's possession, custody, or control.")

The Defendants' stonewalling gets worse in the Vistar Opposition Memorandum, in which one of the many lawyers hired by Ameigh and Barber to speak for them, disguised as a lawyer for Vistar, writes that, "[w]e begin with the absurdity of demanding that Vistar read the mind of Mr. Rothman in making his Rule 26 disclosures for Barber and Ameigh. . . . It would be improper to require that Vistar inquire from Mr. Rothman which source code . . . emails  . . . or computer files and the like he had in mind in making his rule 26 disclosures for Barber and Ameigh . . ."  Dkt. 128 at 14.  The only "absurdity" here is the assertion that it would be "improper" for Vistar to make an inquiry of Mr. Rothman, *who represents Vistar* in the two related state court cases and in the '06 federal case in which Vistar is suing Tavory for infringing the same code sought in discovery in this case.  That assertion is all the more absurd because the lawyer who wrote in Vistar's Opposition Memorandum that Vistar could not make such an inquiry of Mr. Rothman, Stephen Milbrath, *is co-counsel with Mr. Rothman for Vistar* in the related state court cases.

Mr. Milbrath's argument is particularly far-fetched because he participated in the July 27, 2010 discovery dispute resolution call with Mr. Rothman and Plaintiff's counsel when Mr. Rothman said that Plaintiff could obtain the documents identified in the Defendants' Rule 26 disclosures by requesting them from Vistar.  Declaration of Wasylik at ¶ 4; Declaration of Conwell at ¶ 3.  Mr. Milbrath agreed to accept service of the request and respond on an expedited basis, due to the case deadlines then in effect.  *Id.*  He never said he didn't understand what Plaintiff was requesting (*Id.*) and is in no position now to object to Tavory's subpoena on the grounds that he and Vistar don't understand what documents are being requested.

### B.  There is No Credible Evidence to Support the Allegation that the Source Code Already Produced by Plaintiff Is Inauthentic or that Tavory Could Fabricate Source Code.

Although the refusal of the Defendants and Vistar to produce the requested documents is inexcusable, that has not stopped them from making excuses, no matter how baseless.  This includes their utterly false and contrived excuse that Plaintiff has "fabricated inauthentic source code" in the past and will do so in this case unless stopped by the court.  Tavory has not fabricated inauthentic code in the past, and has not done so in this case.  Moreover, there is no basis to contend that he would or could do so when Vistar and the Defendants produce the source code that he requested in discovery.

The Defendants' description of the court's ruling in *Tavory v. NTP, Inc.*, 495 F. Supp. 2d 531, 536 (E.D. Va. 2007) is completely wrong, as Plaintiff described in detail on pages 5-8 of his Reply to Ameigh and Barber's Memorandum in Opposition to Plaintiff's Motion to Compel, which Plaintiff incorporates herein by reference.  Neither the district court nor the

court of appeals said that Tavory fabricated code. To the contrary, the Court of Appeals for the Federal Circuit said that Tavory indisputably wrote the code at issue in that case. *Tavory v. NTP, Inc.*, 297 Fed. Appx. 976, 980 (Fed. Cir. 2008). The copyright registration issue in that case was whether Tavory was permitted to delete a few lines of code to reconstruct version one of his code, which he no longer possessed, from version two of his code, which he did possess. The court held that he was not permitted to do so by relying on his memory. A later regulation of the Copyright Office now permits using a later version of computer code as the deposit material for an earlier version when the earlier version cannot otherwise be obtained.

Defendants' (which includes Vistar) assertion that Tavory altered his code in this case also is baseless. They rely entirely upon a declaration of Donald D. Clayton, who claims to have experience in training how to use PowerBuilder software, which is the software development tool used by Tavory to create the code at issue here.[3] Clayton says in paragraph 24 of his Declaration that Tavory must have tampered with the clock in his computer because there is an object file found within a .pbl library in Tavory's source code that is date and time stamped to be two hours older than the library that contains the file. Clayton Declaration, [Dkt. 131-2]. at ¶ 24. Clayton's conclusion that the time difference is only explained by tampering reveals his lack of expertise in computer forensics in general and in PowerBuilder

---

[3] Clayton is unlikely to survive a *Daubert* motion, for reasons described below and more fully in the declarations of Roland Smith and Matthew Decker, who are Plaintiff's experts. Plaintiff's counsel is not yet able to file such a motion because defense counsel refused to agree to allow an expedited deposition of Clayton on the issues raised in his declaration. The Court should either strike Clayton's declaration or give it no weight. If the Court is inclined to rely upon Clayton, Tavory should first be allowed to depose him in order to challenge his qualifications as an expert.

code development in particular.[4]  The declarations of Matthew Decker, who is a federal court approved computer forensics expert, and Roland M. Smith, who is a leading expert in PowerBuilder code development, show that such supposed anomalies are normal and are the result of transferring files between FAT and NTFS file formats, time zone differences and differences in the way different file systems handle day light savings time.  Decker Declaration, ¶¶ 4-7 [Dkt. 140-3]; Smith Declaration, ¶¶ 24-28, attached as Exhibit D hereto.  Decker described such time stamp differences as "normal and to be expected" and he cites to Microsoft documentation that explains it.  Decker Decl. at ¶¶ 4-5.  Smith, who is part of a very select group of PowerBuilder experts in the world known as "Team Sybase," agrees and explained that he also personally experiences these time stamp anomalies in code development.  Smith Decl. ¶ 24.  They are a result of the normal functioning of the software and not tampering with the computer's time clock.  *Id.* at ¶¶ 24-28.

Clayton's statement that he could not find certain files within Tavory's source code and could not compile the code also reveals his lack of expertise as an expert in PowerBuilder code development.  Plaintiff's expert, Roland Smith, reviewed the same source code reviewed by Clayton and found the .pbl files which Clayton claimed were missing, compiled the code that is designed to be compiled within five minutes, and explained that Clayton does not appear to know enough about the other files to recognize them as ancestor libraries that are not designed to be compiled.  Smith Decl., ¶¶ 9, 18-20, 23 and 30.  Clayton reviewed Tavory's code and found it to be "highly suspect."  Smith reviewed the same code,

---

[4] Clayton's resume also reveals his lack of real expertise in writing and understanding PowerBuilder code.  It does not reveal any employment in which Clayton wrote PowerBuilder code.  Instead, it shows that Clayton's background is in management and training.  *See* Clayton resume attached to Clayton Declaration [Dkt. 131-2].

found it to be "very well organized" and "did not find anything that would make the source code suspect." *Id*. ¶29.

Finally, Clayton's allegation that there is a "significant risk of recent fabrication of the claimed works" if the Defendants produce the source code requested by Tavory, without Tavory first producing everything he claims as his copyrighted works, is without merit. As Roland Smith explains, Clayton's allegation is "absurd," because there are too many incompatibilities between PowerBuilder versions 9 and higher of the Vistar application (which are at issue in this discovery dispute) and PowerBuilder versions 4 and 5, in which Tavory's copyrighted code applications are written. Smith Decl. at ¶32. In addition to Clayton's apparent ignorance of this technical constraint, Clayton also ignores the legal constraints of the protective order entered by the court which provides for designating source code as "attorneys eyes only," so that only Tavory's attorneys and retained experts can possess a copy of the code. *See* Protective Order, ¶ 4; [Dkt. 72]. Tavory could view the code only in a closed room and in the presence of a retained expert and Tavory's attorney. *Id.*

Tavory, not the Defendants, is the party with legitimate reasons to be concerned about code copying, yet he has produced his code to the Defendants, relying upon the protections of the protective order and the power of this Court to enforce it. Since at least 1997, Myra Ameigh has been trying to force Tavory to turn over his source code to her, as documented in emails between them. *See, e.g*., email attached as Exhibit E hereto; Declaration of Oren Tavory dated November 27, 2006, filed in the '06 matter [Dkt. 42] at ¶¶ 2-5. Tavory has refused to do so, because he does not trust her. By the time Ameigh cut off Tavory from Vistar in December, 2005, she had complete control of Vistar's customers, its bank account

and everything else in the company *except Tavory's source code*, because he never gave her a complete copy of his code. Ex. C. Ameigh, therefore, is highly motivated to obtain a complete copy of Tavory's code to use to complete her takeover of every aspect of Vistar. And she's willing to copy Tavory's code and claim it as her own (ie, Vistar's) code, which she already has done with the source code that Vistar filed with the Copyright Office. Smith Decl. ¶ 33.

Vistar argues in its Opposition Memorandum, like the Defendants did in theirs, that it has the right to withhold production of the source code until such time that Ameigh and Barber declare they are satisfied with Plaintiff's production to them. There is no legal basis to support that position, as Tavory explained on pages three and four of his Reply to Ameigh and Barber's Opposition Memorandum. Vistar, in any event, is not in a position to assert that argument because Vistar is not a party, has not requested any documents from Tavory and cannot argue that its duty to produce documents to Tavory is conditioned upon Tavory first producing his documents.

### C. Tavory's request for "all emails" and "all documents" is not overly broad because Ameigh and Barber represented in their initial disclosures that this was what they intended to rely upon.

Ameigh and Barber's initial disclosures in this case represent, under Rule 26, that they intend to rely upon "[a]ll emails regarding the 'VISTAR Imaging Profiler System'," "'[a]ll documentation regarding the ''VISTAR Imaging Profiler System,'" "[a]ny and all corporate documents for Vistar Technology Corp.," and "[s]ource code for all versions of the Vistar Imaging Profiler System." See [Dkt. 87-1](Defendants' Initial Disclosures); [Dkt. 87-6](Defendants' Amended Initial Disclosures). These are the documents Ameigh and Barber

"may use to support [their] claims or defenses." Fed. R. Civ. P. 26(a)(1)(A)(ii).  Thus, where Tavory requested "all emails" and "all documents" relating to the VIPSystem *as identified in the initial disclosures*, Tavory asked for – and is entitled to receive – the source code, computer files, and e-mails "that [Ameigh and Barber] may use to support [their] defenses." Ameigh and Barber obviously had specific e-mails, source code, and computer files in mind when they directed their counsel to respond to initial disclosures in that manner.  They need only, in their role as officers directing Vistar to respond to a subpoena, identify to Vistar's counsel the same items they identified to their personal counsel.

The claim that Vistar cannot respond to the subpoena because Vistar's counsel does not know what is in Ameigh and Barber's counsel's head is therefore a red herring.  Vistar, the corporate entity, is currently being run by Ameigh and Barber, the individual Defendants. To the extent Ameigh and Barber came by their knowledge of what documents they intended to rely on to defend themselves in this matter during the course of their employment with Vistar, as claimed by Vistar, their knowledge is imputed to Vistar.  *See In re Spear & Jackson Securities Litigation*, 399 F.Supp.2d 1350, 1361 (S.D. Fla. 2005)("knowledge of individuals who exercise substantial control over a corporation's affairs is properly imputable to the corporation").

### D. Vistar's claim that producing the source code would be unduly burdensome is belied by their own expert's testimony.

Ignoring the limited nature of what Tavory specifically requests this Court to compel [Dkt. 93] at 12, Vistar claims that producing all of the source code would be unduly burdensome.  In opposing the motion to compel, Vistar incredulously argues that the burden of producing source code would be "monumental" because "[e]ach full version of

VIPSystem code has more than 253,466 lines of code and that number increased with each new release" and the code "Contains thousands of objects in various versions" [Dkt. 128] at 15. Yet in seeking to compel Tavory to produce code, Vistar's own expert,[5] Donald D. Clayton, states that in his experience "a PowerBuilder developer should be able to easily identify and produce his software objects. The PowerBuilder development environment *makes this an easy task*." [Dkt. 106-2] at ¶ 25 (emphasis added). Tavory's expert, Roland M. Smith, concurs. In his declaration, Smith states that, "The number of lines of code or number of printed pages has no bearing" on how easy or difficult it is to make a copy of the code. Smith Decl. ¶ 33. Thus, by Vistar's own admission the act of making copies of the alleged infringing code would not be burdensome at all. Both experts agree that copying the source code is a relatively quick and simple task. *Id.*

WHEREFORE, Plaintiff respectfully requests that this Court grant his Motion to Compel Production from Vistar and grant him such other relief as this Court deems just, including attorneys fees and expenses incurred in obtaining the relief sought in his Motion to Compel.

Dated: October 18, 2010            */s/ G. Donovan Conwell, Jr.*
　　　　　　　　　　　　　　　　　G. Donovan Conwell, Jr.
　　　　　　　　　　　　　　　　　Florida Bar No: 371319
　　　　　　　　　　　　　　　　　Dineen Pashoukos Wasylik
　　　　　　　　　　　　　　　　　Florida Bar No: 0191620
　　　　　　　　　　　　　　　　　**CONWELL KIRKPATRICK, P.A.**
　　　　　　　　　　　　　　　　　2701 North Rocky Point Drive, Suite 1200
　　　　　　　　　　　　　　　　　Tampa, FL 33607
　　　　　　　　　　　　　　　　　(813) 282-8000; (813) 282-8800 (Facsimile)
　　　　　　　　　　　　　　　　　dconwell@CKbusinesslaw.com

---

[5] Interestingly, Clayton swears that he has been engaged as an expert both for the defendants and for Vistar Technologies Corp. [Dkt. 116-2] ¶ 1. Thus, Vistar cannot disclaim any knowledge of Clayton's actions in the same way it has disingenuously disclaimed knowledge of Ameigh and Barber's participation in discovery.

dwasylik@CKbusinesslaw.com
Attorneys for Oren Tavory

## CERTIFICATE OF SERVICE

I hereby certify that on October 18, 2010, I electronically filed the foregoing with the Clerk of Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record on the below Service List in the manner specified:

*/s/ G. Donovan Conwell, Jr.*

**SERVICE LIST**
**Oren Tavory v. Kathy Barber and Myra Ameigh**
Case No. 06-civ-80535 Ryskamp/Vitunac
Case No. 09-civ-80934 Ryskamp/Vitunac
United States District Court, Southern District of Florida

| | |
|---|---|
| Joel B. Rothman, Esq.<br>jrothman@arnstein.com<br>ARNSTEIN & LEHR, LLP<br>515 North Flagler Drive , Sixth Floor<br>West Palm Beach, Florida 33401-4323<br>Attorney for Defendants | Robert H. Thornburg<br>rthornburg@addmg.com<br>Allen, Dyer, Doppelt, Milbrath & Gilchrist, P.A.<br>777 Brickell Avenue, Suite 1114<br>Miami, FL 33131 |
| Stephen D. Milbrath<br>smilbrath@addmg.com<br>Allen, Dyer, Doppelt, Milbrath & Gilchrist, P.A.<br>Post Office Box 32802<br>Orlando, FL 32802 | |